CHURCH and another *against* STERLING and others.

In *September*, 1839, *A*, the president, and *B*, the treasurer, of the *Housatonuc Rail-Road Company*, acting as the agents of the corporation, purchased of *C*, with a view to obtain a supply of gravel for the road, a piece of land lying near it, for the sum of 2488 dollars, and took a deed thereof to themselves. They paid 88 dollars of the purchase money from the funds of the corporation, and gave to *C* their note for the balance.    The company paid the interest on such note until the 23d of *February*, 1841, when *A* and *B*, by direction of the company, sold a part of such land, for a sum sufficient to pay the note, and leave in their hands the sum of 599 dollars ; which sum, together with the legal title to the unsold part of the land, they retained.    In *June*, 1842, sundry notes of the company, issued pursuant to the provisions of the 3d section of the act of the General Assembly, passed in 1839, to aid in the construction of this company's road, and approved by the commissioners, becoming due, were duly presented for payment, which was refused, and they were thereupon protested for non-payment.    On a bill in chancery, brought by the commissioners against *A* and *B*, to obtain the money so in their hands and the legal title to the land so held by them, for the purpose of providing for said notes, it was held, 1. that these facts being shown, it was the right and duty of the commissioners to sell the property in question for the

benefit of the holders of such notes; 2. that if no necessity of immediate sale existed, it would still be the duty of the commissioners, as trustees and mortgagees, to make the estate available to meet the emergencies of the case, by sale or otherwise, as they should arise; 3. that although *A* and *B* could not, without something more than an *ex officio* authority, bind the corporation for the purchase of land, yet professing to act only as agents, and for the sole benefit of the corporation, their acts would become obligatory, by recognition and a subsequent ratification, express or implied; 4. that the corporation, by paying a part of the purchase money and the interest on the balance, by taking gravel from the land, and by acting as the proprietor thereof, ratified the acts of such agents; 5. that *A*, with his consent, was a competent witness for the plaintiffs, though a stockholder in the corporation; his corporate interest, which might have been advanced by his testimony, being overbalanced, by the private and individual interest, which he had in the matter in controversy.

An agent employed to purchase for another, whether he be actually or constructively an agent, cannot purchase for himself, but is a trustee for his employer.

Parol proof of the circumstances under which land is purchased, by one person, and a deed taken to himself, for the benefit of another, is admissible, to show an implied or resulting trust.

Parol proof of an express trust in the purchase of land, is not excluded, by the statute of frauds and perjuries, where there has been part performance, not only by the payment of the purchase money, but also by an entry and occupation under the contract, and expensive improvements upon the land.

THIS was a bill in chancery, brought by *Leman Church* and *Henry Dutton*, Esqrs., commissioners on the *Housatonuc Rail-Road*, against *Jesse Sterling*, seeking the payment to the plaintiffs of certain moneys, and a conveyance to them of the legal title to a certain parcel of land. The corporation of the *Housatonuc Rail-Road Company* and *William P. Burrall*, Esq., its president, were also cited in, as defendants.

The bill stated, that the *Housatonuc Rail-Road Company* was an incorporated company of this state, invested, by their charter, with various powers and privileges, and among others, with the power of purchasing, holding and selling real estate; that on the 30th of *September*, 1839, it became important and necessary to the interests of said company, and to carry into effect the objects of their act of incorporation, that they should become the proprietors of a certain piece of land, situated in *Bridgeport*, bounded &c., containing about 100 rods of land; that at the request of said company, on said 30th of *September*, *Jesse Sterling*, who was then treasurer of said corporation, and *William P. Burrall*, who was then its president, acting as the agents of said corporation, purcha-

*Fairfield,*
June, 1844.

Church
*v.*
Sterling.

sed said land of *Joseph P. Sturges*, for the sum of 2488 dollars, and paid him out of the moneys of the corporation 88 dollars, and took a deed of said land, in their own names, to hold until the whole of the purchase money should be paid, and gave back to said *Sturges* a mortgage deed of the premises, predicated on their note for the balance of the purchase money; that said corporation, from time to time, paid the interest on said note until the 23d of *February*, 1841, when said *Sterling* and *Burrall*, at the request and by direction of said corporation, sold the *Western* part of said piece of land to *Spencer* and *Wheeler*, for a sum sufficient to pay the amount due on said note, and to leave in the hands of said *Sterling* and *Burrall* the sum of 599 dollars; that they thereupon took up said note, and received of said *Sturges* a quit-claim deed of said land, and of said *Spencer* and *Wheeler* said sum of 599 dollars, which they still hold, together with the legal title to the *Eastern* part of said piece of land.

The bill further stated, that on the 1st of *March*, 1841, said corporation demanded of said *Sterling* and *Burrall* the delivery of said money to them, for their own use, and a quit-claim deed of all the right, title and interest of said *Sterling* and *Burrall* in and to the *Eastern* part of said piece of land; that said *Burrall* acknowledged the claim of said company, and was then, and ever since has been, ready and willing to deliver up said money, and to surrender to said company said *Eastern* part of said land; but that said *Sterling* has, at all times, denied, and still does deny, the right of said corporation to said land or money, and has, at all times, refused, and still does refuse, to deliver up said money, or any part thereof, to said company, or to give a quit-claim deed of said land to said company.

The bill further stated, that on the 1st of *June*, 1842, several protests for the non-payment by said corporation of certain notes, issued by said corporation, and approved by the plaintiffs in writing on said notes, duly made by a notary public, were delivered to the plaintiffs, according to the provisions of a statute law of this state, passed in 1839, entitled " An Act to aid in the construction of the *Housatonuc Rail-Road*," (a)

(a) The 1st section of this act provides for the appointment of two commissioners annually, by the General Assembly, whose duty it shall be, at least

which act was, on the 19th of *June*, 1839, and before the issuing of said notes, presented to a legal meeting of the stockholders of said corporation, duly warned and held for

once in each year, and oftener, if they shall deem it necessary, to examine the road, and all the books and accounts of the company, and report to the General Assembly, annually, the amount which they shall ascertain to have been actually expended in the construction of the road.

The 2d section authorizes the corporation to issue its bills or notes, promising the payment of money, to any person, or order, or bearer, which bills or notes shall be obligatory on the corporation, according to the tenor thereof, and shall be assignable according to the custom of merchants, and the laws relating to inland bills of exchange; provided however, that all bills or notes so issued, shall be approved by said commissioners, which approval shall appear on said bills; and that the whole amount of such bills at any time outstanding against the company, shall never exceed one-fourth of the amount, which shall, at any time, have been actually expended, by the company, in the construction of the rail-road.

The 3d section is as follows: "The whole stock, franchise and income of said company, and all real estate, which now is, or hereafter may be, owned by said company, and all personal estate, which may be owned by said company, at the time of any failure to pay any such note, shall be, and is hereby declared to be, pledged and mortgaged to the commissioners, to be appointed by virtue of this act, and to their successors in the said office, as security for the redemption and payment of all notes which shall be issued by said company, by virtue of this act; and in case said company shall, at any time hereafter, on lawful demand, during the hours of business, at a place of business of said company, to be always kept open for that purpose in the city of *Bridgeport*, fail to redeem, in the lawful money of the *United States*, any note issued by said company, by virtue of the provisions of this act, according to the tenor thereof, the holder of such note, making such demand, may cause the same to be protested for non-payment, by a notary public, in the usual manner; and the said commissioners, on receiving such protest, shall forthwith give notice in writing, to said company to pay the same, and if said company shall omit to do so, for twenty days after such notice, said commissioners shall immediately thereupon, (unless they shall be satisfied that there is good and legal defence against the payment of such note or notes,) give notice, in two or more newspapers printed in this state, that all the notes so issued by said company will be redeemed out of the property pledged in their hands as aforesaid for the security of the same. And the said commissioners shall thereupon proceed to sell or dispose of (in such manner as they shall judge most for the interest of the holders of such notes,) so much of the stock, or real or personal estate of said company, as shall be necessary to pay and redeem all of the said notes, which shall, at that time, be outstanding against said company, together with the cost and expense attending such sale, and out of the proceeds of such sale, to pay to the holders of such notes the amount thereof, with interest from the time of the demand and failure to pay as aforesaid."

The 4th section provides, that the act shall not take effect in regard to said company, till the stockholders thereof, at a legal meeting called for that purpose, shall have assented to the provisions of the same.

*Fairfield,*
June, 1844.

Church
*v.*
Sterling.

that purpose, and was by said corporation then approved and adopted; which notes, so protested, had been issued, by said corporation, in pursuance of said act, and consisted of one note for 500 dollars, dated *November,* 18th, 1841, payable to the bearer six months from date, and two notes of the same date, for 100 dollars each, with interest, payable in like manner, and were duly protested for non-payment, on the 23d day of *May,* 1842, then being the property of *Betts, Harlan & Hollingworth;* that in compliance with the provisions of said act, the plaintiffs, in writing, at the office of said corporation in *Bridgeport,* demanded payment of said notes of said corporation, *viz.* on the day and year last aforesaid; but that said corporation, then and ever since, have wholly neglected and refused to pay said notes; that the plaintiffs thereupon gave notice, by publication in two newspapers in this state, according to the provisions of said act; and that, by reason of the premises, the whole stock, franchise and income of said company, and all the real estate owned by said company, and all the personal estate which was owned by said company, at the time of their failure to pay said notes, as aforesaid, including the equitable right of said company to said money and land in the hands of the defendants, became and is pledged and mortgaged to the plaintiffs, to secure all the notes of said company, which had then been approved by the plaintiffs, amounting to the sum of about 260,000 dollars.

The bill further stated, that it had become the duty of the plaintiffs to sell or dispose of so much of the stock, or real or personal estate of said corporation, as may be necessary to pay the notes certified by them as aforesaid, together with the costs and expense attending said sale, and that said land and said money are wanted for the redemption of said notes; that said *Sterling* and *Burrall,* in transacting said business, acted solely as the agents of said corporation, and now hold said land and said money, as trustees for said corporation, and through them, for the plaintiffs, as aforesaid; that the plaintiffs cannot dispose of said real estate to advantage, so long as the legal title remains in said *Sterling* and *Burrall;* and that they are without remedy at law.

To this bill the defendant *Sterling* demurred, showing for causes of demurrer, that the plaintiffs, in their bill, do not show in themselves, as such commissioners, any right or title

to maintain said bill to recover said land and money, or either of them, of the defendant; and do not show, that said statute law in said bill mentioned, ever took effect, and became operative; nor that said notes of said company were ever legally issued, in conformity to the provisions of said law; nor that any notes of said company were ever so issued; nor that the stockholders of said company ever assented to the provisions thereof; nor that any of the provisions and acts, required by said act, to authorize the plaintiffs to sell or dispose of any of the estate of said company, have ever been had and done; nor that said land and money are the property of said company; nor that it is necessary they should be sold, for the payment of out-standing notes of said company; nor what notes were protested; nor to what amount.

The court overruled the demurrer; and thereupon the cause was heard upon the facts, at *Fairfield, February* term, 1843, before *Williams,* Ch. J.

On the hearing, *William P. Burrall,* one of the defendants, was offered as a witness, by the plaintiffs, in support of the allegations in their bill. The defendant, *Sterling,* objected to his admission, as he was a stockholder in the *Housatonuc Rail-Road Company.* All the parol testimony tending to show an interest in the land in that company, was also objected to, as within the statute of frauds and perjuries. The witness, however, was admitted, and also the parol evidence, subject to the ultimate opinion of the court.

*The Housatonuc Rail-Road Company* was incorporated, as stated in the plaintiffs' bill; and their charter, and the subsequent acts and resolves relating thereto, are all to be taken as part of their case.

The rail-road was laid out across the land of *Joseph P. Sturges;* and 25 cents damages assessed to him therefor.

It was shown, by parol evidence, that a supply of gravel was much needed, by said company, to complete their road; and the defendant, *Burrall,* being then president of the company, and the defendant, *Sterling,* treasurer, they, for and in behalf of the company, applied to *Sturges* to purchase gravel from the land mentioned in the bill, to use upon the road then laid through said land; but *Sturges* refused to sell it; and thereupon the defendants, believing it would be for the interest of the company to own the land itself, as the means of

*Fairfield,*
June, 1844.

Chur h
*v.*
Sterling.

procuring such supply of gravel, negotiated, for and in behalf of said company, with *Sturges*, for the land mentioned in the bill, and contracted with him to buy it; and he agreed with them to sell it to said company, who were to pay therefor the sum of 88 dollars in cash, and to secure the sum of 2,400 dollars in the notes of said company, with a mortgage upon the land. But before the conveyance was made, it was suggested to *Sturges*, that the commissioners might, by operation of law, have a lien upon the land, after his deed was given, superior to his, and he declined to complete the contract; whereupon the defendants, without any specific direction from said company, but with an intention of promoting its interests, and to prevent any injury, which might arise from the refusal of *Sturges* to complete the contract, agreed with him, that they would give their own individual note for the sum of 2,400 dollars, and take a deed to themselves of the land from *Sturges*, and secure him, by mortgage of the said land, for the 2,400 dollars; which was done accordingly; and the 88 dollars was paid down from the funds of the company, an entry of which was made upon the books of the company, on the 18th of *September*, 1839. The title thereafter remained in the defendants, until the 25th of *February*, 1841; during which time 141 dollars interest was paid, by the company, to *Sturges*, and charged in the books of the company. Large quantities of gravel were also taken from the land, besides what was wanted for the road, and spread upon the flats, being a part of the land so purchased, which needed to be raised, at an expense to the company of 258 dollars, 12 cents. Other gravel was purchased and spread upon said flats, at an expense to the company of 36 dollars, 25 cents. The defendants, finding afterwards, that the land was not particularly useful to the company, sold that part of it lying *West* of the rail-road, for the sum of 3000 dollars, and took up and cancelled their note to *Sturges* of 2,400 dollars, and received, in addition thereto, the sum of 598 dollars, 98 cents; the title to the rest of said land still remaining in them. The money so received was by *Sterling* placed in deposit, in specie or bank notes of specie value, in the vault of the bank connected with said company, with a memorandum of the amount; but no entry was made in the books of such bank. This money has since, by direction of the officers of said

company, been changed into bills or notes of the *Housatonuc Rail-Road Bank*, now considerably depreciated. The defendant, *Sterling*, has also received about 60 dollars, as rent of said land.

The act of the General Assembly of 1839, referred to in the bill, was accepted and approved, at the time and in the manner stated in the bill; and sundry notes of the company were presented, as therein stated; and such proceedings thereon were taken by the plaintiffs, as are therein stated, to vest in them the estate and interest of said company.

It was also shown, by the records of the company, that in *November*, 1837, the president of the company was appointed its general agent, to have a general supervision and direction of its affairs, with full power to settle all demands against the company, and draw his orders on the treasurer therefor, and do all necessary and proper acts for the conducting and prosecuting of the business of the company, subject to such regulations as should from time to time be adopted, by the board of directors. By a subsequent vote, it was resolved, that the then president be clothed and endowed with all the power and authority previously conferred on the president of the company, either by general or special resolution.

There was no vote authorizing expressly the purchase of this land, or approving thereof, or any action thereon, unless it can be inferred from the facts stated, until the sale of the land and a short time before this suit was brought, when the directors claimed the land left, and an account of the money; in which claim the defendant, *Burrall*, agreed. But the defendant, *Sterling*, denied the right of the company, claiming, that as they had run no risk, they were not entitled to any profit. In *March*, 1842, the directors resolved, that said *Sterling* had acted as the agent of the company, and was not entitled to any profit in the land, and appointed a committee to make demand of him for the money and a conveyance of the land; and such demand was accordingly made, in due form; but said *Sterling*, denying the plaintiffs' right, refused to comply therewith.

The questions whether, upon these facts, the defendants are to be considered in law as agents or trustees of said company, in the purchase and sale of said land; and as to the sufficiency of the plaintiffs' bill; and as to the admission

of the parol testimony, and its operation in the case; were reserved, at the request of the parties, for the consideration and advice of this court.

*Hawley* and *Dutton*, for the plaintiffs, contended, 1. That the bill stated a case, which called for the interposition of a court of chancery. In the first place, the property in question equitably belonged to the corporation. The land was purchased for its use and accommodation, by its officers acting as its agents, and paid for in part from its funds. By paying the interest on the note, it recognized *that* as its own debt; and by taking gravel from the land, making improvements upon it and exercising other acts of ownership over it, it ratified the acts of its officers, as clearly as if it had passed a vote to that effect. Secondly, the plaintiffs were not only *authorized* by the act of 1839, to call for this property, but in view of the protested notes and the embarrassed state of the company's affairs, it was their *duty* so to do. Thirdly, the defendants being *trustees* of the property, it is clearly within the jurisdiction of a court of chancery to compel a performance of the trust.

2. That if the plaintiffs are entitled to a decree in their favour, it should be for the money in their hands and the legal title to the unsold land. This results from the principles on which they are entitled to any relief.

3. That *Burrall* was a competent witness for the plaintiffs; his interest as a stockholder, being more than balanced, by his opposing interest as a party.

4. That parol evidence was admissible to show in what character, and under what circumstances, the defendants obtained the property in question. In the first place, the statute of frauds and perjuries is not applicable here. *Bunnel* v. *Taintor's* admr. 4 *Conn. R.* 468. 573. A resulting trust may always be proved by parol. *Botsford* v. *Burr*, 2 *Johns. Ch. R.* 405. 409. Secondly, if otherwise, the case is taken out of the statute, by part performance. *Downey* v. *Hotchkiss*, 2 *Day*, 225. *Cady* v. *Cadwell*, 5 *Day*, 67. *Crocker* v. *Higgins* & ux. 7 *Conn. R.* 342. 348, 9.

*Bissell* and *Loomis*, for the defendant, *Sterling*, contended, 1. That the plaintiffs' bill was insufficient. In the first place,

the plaintiffs, by the act of 1839, are constituted public agents, with a mere power to sell; and the bill does not show any necessity for a sale. Secondly, the plaintiffs do not show themselves entitled to the relief sought. If entitled to any relief, the court can compensate them *in money.* And it is just and equitable that that compensation should be in proportion to the amount paid, and should be taken out of the money (598 dollars) deposited by *Sterling.*

2. That *Burrall* was an incompetent witness for the plaintiffs, by reason of his interest, as a stockholder, to obtain a decree in their favour; and though he is a party on the record, he is no party to the controversy, unless it be *against* his co-defendant; nor does it appear, that he has any interest in opposition to his corporate interest, sufficient to balance it.

3. That the testimony, if admissible, does not show, that the company was interested in the original purchase; and consequently, there is no such resulting trust as a court of equity will enforce. *Botsford* v. *Burr,* 2 *Johns. Ch. R.* 405. It shows, that *Sturges refused* to sell *to the company ;* and that the purchase was made by the defendants, on their own account. These facts are not contradicted, by the facts relied on by the plaintiffs—such as the payment of the 88 dollars and the interest on the note, filling up the flats, taking gravel, &c.

4. That the testimony does not show, nor do the facts constitute, a part performance of an agreement between the defendants and the company. There is no such agreement shown; and if any, there is no performance of its terms shown, sufficient to establish it. *Cady* v. *Cadwell,* 5 *Day,* 67. 2 *Sw. Dig.* 30, 1, 2. 1 *Phil. Ev.* 567. *Newl. Cont.* 187 to 191. *Sug. Vend.* 90, 1.

5. That parol evidence is inadmissible, in a case like this, to show either an express or a resulting trust. 3 *Stark. Ev.* 899. and *in notis.* 1 *Phil. Ev.* 567. 2 *Sw. Dig.* 112. 2 *Am. Ch. Dig.* 561.

CHURCH, J. The plaintiffs are commissioners, appointed under the provisions of an act passed in 1839, entitled "An Act to aid in the construction of the *Housatonuc Rail-Road."* By virtue of this statute, the whole stock, franchise and income of the *Rail-Road Company,* and all real estate, which

then was, or thereafter might be, owned by said company, was declared to be pledged and mortgaged to the commissioners, as security for the redemption and payment of notes issued by virtue of that act. And the commissioners are empowered to sell and dispose of so much of the stock, or real or personal estate, of the company, as may be necessary to pay or redeem said notes. And directions are given when and how the commissioners are to proceed in carrying out the provisions of the law.

The bill alleges the non-payment and protest of several notes, and also other facts preliminary to the right and duty of the commissioners to sell the property for the benefit of the holders, not only of the protested notes, but of all the notes approved by them. It rests with the commissioners to determine what part of the property shall be sold, whether it shall be real, or personal—the property now in controversy, or other estate. We know not what other facts, to show the propriety or necessity of a sale, could exist, than such as are averred in the plaintiffs' bill. Indeed, if no necessity of immediate sale existed, still it would be the duty of the commissioners, as trustees and mortgagees, to protect and preserve the estate, and the company's title to it, so that it could be made available to meet the emergencies of the case, by sale or otherwise, as they should arise.

The commissioners, under this law, have more than a naked power to sell : by the significant terms of the statute, they are constituted *mortgagees,* and therefore, have a legal interest ; a legal interest in trust for the benefit of certain creditors of the *Rail-Road Company.* Superadded to this interest is the power to sell, without any other process of foreclosure.

But the essential claim of *Sterling,* one of the defendants, is, that neither the plaintiffs, nor the *Rail-Road Company,* have an interest in the contract made by these defendants, with *Sturges,* for the sale of the land in question, but that the beneficial interest is in themselves entirely. An examination of this claim, we think, will show it to be unfounded ; and that the defendants have never stood in any other relation to this transaction than as agents of the corporation. The defendants, both of them, were officers of the company, and as such, to a certain extent, its agents. And although they could not, without something more than an *ex officio* authori-

*Fairfield,*
June, 1844.

Church
*v.*
Sterling.

ty, bind the corporation, for the purchase of lands ; yet professing to act only as agents, and for the sole benefit of the company, their acts would become obligatory, by recognition and a subsequent ratification, express or implied. *Ang. & Ames*, 157.

There are so many unforeseen contingencies in the management of the affairs of a corporation, that it is impossible it should anticipate all cases in which it may be necessary to provide for the future performance of an act, or the appointment of an agent. There is a propriety, therefore, in many cases, that the most active officers, such as president, superintendent, cashier, &c. should exercise a prudential authority in providing for the interests of the corporation, subject, in all instances, to its assent and approval. But in the present case, there was more than this. Mr. *Burrall*, the president of the *Rail-Road Company*, had been appointed its general agent, with a general power of supervision and direction, and with authority to do all necessary and proper acts for conducting the business of the company, subject to such regulations as from time to time should be adopted by the board of directors. This gave him power to negotiate for the purchase of this land on behalf of the corporation, as its agent. He has never claimed to act in a different capacity ; and does now, as he has ever done, recognize, in this negotiation, the *Rail-Road Company* as the principal. And Mr. *Sterling*, having, in this entire transaction, acted with him for a common purpose, cannot now claim a separate and opposing character. These officers both acted as agents : they saw and felt the necessity of procuring gravel from this land, for the use of the road ; and that this could be done only, by effecting a purchase of the land itself. And although they gave their own notes, and received a deed of the land in their own names ; yet this was done only, for and on behalf of the company, whose officers and agents they were. It was because, under the depressed credit of the *Rail-Road Company*, they could not procure either the gravel or the land, without a pledge of their personal responsibility, for the benefit of the company. The very nature and manner of the negotiation show this to be true. *The Rail-Road Company*, by the original contract, were to pay 88 dollars in cash, and to secure the balance of the purchase money, by its notes and mort-

*Fairfield,*
*June, 1844.*

Church
*v.*
Sterling.

gage ; but for reasons, personal to *Sturges,* the grantor, this mode was abandoned, and the same result effected, by the course subsequently adopted.   The company paid 88 dollars, part of the purchase money, and also paid the interest on the notes given by these defendants for the balance, amounting to the sum of 141 dollars.   This money was paid by the company, from its own funds in the hands of *Sterling*, as its treasurer, and was so entered upon its books.   Thus, the corporation assumed the payment of the purchase money, and ratified the acts of its agents.   So also the *Rail-Road Company,* with the assent of the defendants, and without any other contract, acted as the sole proprietors of this land. They took the gravel according to their original purpose, and at their own expense, and for their sole accommodation. Such being the state of things, while the legal title to the land remained in the defendants, they sold so much of it as was not necessary for the company's use, and from the avails, paid the note which they had given for the purchase of the land, and which had been recognized by the company as due from itself ; leaving a balance of 598 dollars, 98 cents, in cash, as well as the residue of the land, which now constitute the subject of the present controversy ; because one of the defendants sets up a claim to retain both land and money in opposition to the claims of the plaintiffs, and the rights of the corporation.

We cannot fail to see, that here has been an agency on the part of the defendants, and an assent and ratification by the *Rail-Road Company,* throughout the whole of this business, until it terminated in a fortunate speculation, of which one of the defendants claims to retain the benefit, to the exclusion of the company.   But it is too late to do this.

An agent employed to purchase for another, cannot purchase for himself, whether he be actually or constructively an agent.   He is, in such case, a trustee for his employer. *East-India Company* v. *Henchman,* 1 *Ves. jr.* 289.   *Massy* v. *Davis, Id.* 317.   *Campbell* v. *Penn's. Life Ins. Co.,* 2 *Wharton,* 64.   *Bartholomew* v. *Leach,* 7 *Watts,* 472.   *Ringo* v. *Binns* & al. 10 *Peters,* 269.   2 *Cromp. & Mees.* 139. *Story on Agency, sec.* 211.   *Banks* v. *Judah,* 8 *Conn. R.* 145.   *Johnson* v. *Blackman,* 11 *Conn. R.* 342.

Can any one doubt, if the result of this contract had been a

loss, that the defendants would have claimed an indemnity from the company? But an agent cannot be permitted to turn the consequences of a bad speculation off upon the principal, and pocket the results of a good one. The controuling reasons for these principles, are the same which pervade the whole law of fiduciary connexions—the preservation of unsuspected good faith, and an undivided motive for the advancement of interests which are committed to others.

To make out the case stated by the superior court, parol proof was admitted, and especially the testimony of Mr. *Burrall*, the president of the *Rail-Road Company*, and one of its stockholders. This testimony was admitted, on the plaintiffs' motion, and in support of their claims; and this furnishes another ground of objection on the part of the defendants.

Parol proof was admissible in the case, to show an implied or resulting trust. The ground of the plaintiffs' claim, is, that the defendants became their trustees, by force of the circumstances proved. And if the principles we have before stated, be admitted as the law, this claim must be conceded. Here is no pretence of an express trust, in opposition to the terms of the deed, but a trust created by operation of law, resulting from the relation in which the parties stood to each other as principal and agents, and from the clearly proved fact, that the only real consideration advanced in payment for the land, was paid by the plaintiffs. Such a trust may be proved by parol, even under the *English* statute of frauds and perjuries, and of course, under our statute, which is silent on the subject of trusts. *Sugden's Law of Vendors,* 414. *Roberts on Frauds,* &c. 94. 2 *Sw. Dig.* 112. *Gascoigne* v. *Thwing,* 1 *Vern.* 366. *Lane* v. *Dighton, Amb.* 409. *Lench* v. *Lench,* 10 *Ves.* 517. *Finch* v. *Finch,* 15 *Ves.* 50. *Dean* v. *Dean,* 6 *Conn. R.* 285. *Boyd* v. *McLean,* 1 *Johns. Ch. R.* 582. *Botsford* v. *Burr,* 2 *Johns. Ch. R.* 405. *German's* lessee v. *Gabbald,* 3 *Binn.* 302.

But if the plaintiffs relied upon an express trust, we do not see but their proof would be relieved from any objection arising from the statute of frauds and perjuries, by reason of the several unequivocal acts of performance, which have been proved—not alone by the payment of the purchase money; for this, by itself, has sometimes been denied to amount to such a part performance as will take a case out of the statute

*Fairfield,*
*June, 1844.*

Church
*v.*
Sterling.

of frauds, &c. ; but also by an entry and occupation under the contract, as well as by expensive improvements made by the company upon the land in question. *Roberts on Frauds,* *App.* 8. 153. 1 *Sch. & Lefroy,* 40, 41.

The defendants deny that acts of performance can be shown, before the contract is specifically proved ; and they claim, that in the present case, such acts were permitted to be proved, to help out the proof of the contract. That the contract relied upon, must be very satisfactorily proved, before a performance of it will be decreed, and that a trust must be clearly established, before it will be enforced, is conceded ; but that this full proof is to be a preliminary in the plaintiff's course of inquiry, is denied : this would rather be a reversal of the proper order of proceeding. Acts of performance lay the foundation of the introduction of parol proof ; and such acts may be, and perhaps ought to be, of such a nature as to furnish material evidence of the contract or trust relied upon. *Roberts on Frauds,* 161. *Fonbl. Eq. ch.* 3. *s.* 8. *n. e.* (*Am.* ed.) *Phelps* v. *Thompson,* 1 *Johns. Ch. R.* 149. *Lindsey* v. *Lynch,* 2 *Sch. & Lefroy,* 1. 2 *Sto. Eq.* 72. *in notis.*

Mr. *Burrall* was admissible as a witness, on the part of the plaintiffs, to prove the facts averred in their bill. He is a defendant, but a voluntary witness. He is a stockholder in the *Rail-Road Company ;* but to what extent does not appear ; and in this respect, he had a corporate interest, which might have been advanced by his testimony ; but this was necessarily overbalanced, by the private and individual interest which he had in the subject of this controversy, and which his testimony conduced directly to oppose and destroy.

We are of opinion, therefore, upon the facts found by the superior court, that the defendants were agents and trustees of the *Rail-Road Company,* in the purchase and sale of the land ; that the plaintiffs' bill is sufficient ; that the parol evidence offered, was admissible ; and we shall advise, that the defendants convey to the *Rail-Road Company* the land remaining unsold, and pay to them the avails of the land sold, now remaining in their hands.

In this opinion the other Judges concurred.

Decree for plaintiffs.