# OCTOBER TERM—1870–71.

PERKINS, LIVINGSTON & POST  v.  D. C. SWANK et al.

1. "INNOCENT PURCHASER" DEFINED.—He is an innocent purchaser who buys a legal estate and pays the purchase price without knowledge of an outstanding equity. The title purchased must be apparently perfect, and there must be some present new consideration actually paid. The mere settlement of an antecedent debt, without any new consideration being paid, is not sufficient.

2. NOTICE.—If notice of a prior equity be imparted to an innocent purchaser for value, before payment of any or all the purchase money, though he already have the deed, equity will hold so much of the money as shall remain unpaid.

3. GENERAL PRINCIPLES.—If two parties claim by equitable title, he who is prior in time, is better in right, and where equities are equal in merit, the law shall prevail.

4. MORTGAGES AND DEEDS OF TRUST, AS AFFECTED BY PRIOR OUTSTANDING EQUITIES. Referring to Pope et al. v. Pope et al., 40 Miss. R., 517. If the court meant that a mortgage or deed of trust resting upon a present and cotemporaneous and valuable consideration, is not entitled to protection under the principles applicable to innocent purchasers, we are not prepared to concur; but in so far as the court declares that such instruments, when executed to secure a pre-existing debt, are unprotected by the law applicable to innocent purchasers, the judgment of the court is in harmony with the authorities; and this was the only point adjudicated.

5. POSSESSION WHEN NOTICE OF TITLE.—Possession by the vendee under an unregistered deed, is notice of the deed; i. e., such possession is notice of the possessor's title, whatever it be; and is sufficient to put creditors, purchasers and other interested parties on their inquiry.   Dixon et al. v. Lacoste, 1 S. & M., 107.

6. FIXTURES AT COMMON LAW.—The general rule at common law is, that whatever is annexed to the freehold becomes part of it, and cannot be removed, except by the owner of the inheritance. But there were always exceptions in favor of trades and manufactures. The latitude was broad, in favor of tenants and against landlords; but strict, in favor of heirs, and against executors and administrators. And in England there seems to have been no relaxation of this rule in favor of erections for agricultural uses; though it is otherwise in the United States. Van Ness et al. v. Pacard, 2 Pet., 147.

7. RULE FOR TESTING WHETHER A THING BE A FIXTURE.—The leading test is the intention with which the thing was put on the land.

8. ILLUSTRATION—CASE AT BAR.—S. leased real estate for a year, giving special lien for the rent, and afterward contracted, on certain conditions, to purchase it, and, thereupon, put upon the premises certain machinery for sawing lumber for market. Having mortgaged the machinery to a stranger, S. made default in the conditions of his contract for the purchase of the land. Held : That as tenant, S. might have removed his machinery from the land at the end of his term, and therefore, as tenant, his mortgage to a stranger would have been valid as upon personalty. But, that, as

his relation to his landlord had been changed by his contract to purchase, and as the machinery had been erected on the premises by S. in his character *as vendee*, and for the purpose of converting timber on the land into lumber for market, the machinery became part of the freehold, and could not be encumbered by S., by mortgage or otherwise.

9. ACKNOWLEDGMENT OF DEEDS.—If the correctness of the adjudication of the high court of errors and appeals, in Smith et al. v. Williams, 38 Miss. R., 48, were even doubted, that adjudication would not *now* be disturbed. Because to do so would be disastrous to the rights of property made in conformity to it. The rule there laid down is that the term *executed*, when used in the certificate of the acknowledgment of a deed, imports not only signing and sealing, but also the act of *delivery*.

10. DEEDS—REGISTRATION—POLICY OF—NOTICE.—Though the policy of requiring deeds to be recorded is to give notice to subsequent purchasers and creditors, yet, if the subsequent purchaser for value had the desired notice otherwise, he will not be protected in his purchase on the ground, merely, that the prior purchaser's deed was not registered.

Appeal from the chancery court of Tallahatchie county. COTHRAN, J.

The facts are fully stated in the opinion of the court.

*Yergers*, for the appellants.

The court will see, upon looking into the evidence, that the case presented by the record is a contest between two incumbrancers for priority in the application of the proceeds of property which each claim under a mortgage. The moral equity of the complainants cannot be denied, and if there is no legal obstacle in the way, would certainly determine the question in their favor. They originally owned the saw-mill and machinery, and sold it to Swank. He has never paid them for it, and the claim they have is for payment of the very debt contracted for the property. But *not only* is moral equity on the side of complainants, but the rules of strict law are equally in their favor. The claim or mortgage contained in the contract of 20th December, between Swank and Harper, was never proven or acknowledged by Swank, so as to entitle it to be recorded, and as a matter of fact, it was not placed upon record until the 13th of April, 1867. But the mortgage in favor of complainants was made on the 13th of February, 1867. It was duly acknowledged on that day, and was duly recorded on the 16th of February, 1867. If there is one rule in this state more clearly recognized and acted upon than another, it is, that, as between incumbrancers, the first recorded has priority.

But it is said the acknowledgement of complainants mortgage is defective because it recites that Swank appeared and acknowledged that he " executed" the mortgage, instead of saying that he " signed, sealed, and delivered" it.  The case of Smith v. Williams, 38 Miss., 48, is conclusive on this point, and the case of Hall v. Thompson, 1 S. & M., 443, at an early day, settled the rule in reference to acknowledgements of deeds in the same way.

But it is said that the mortgage to complainants is to recover an antecedent debt, and they are not *bona fide* incumbrancers, and Pope v. Pope, 40 Miss., 578, is cited to sustain their position.   The case of Pope v. Pope, was not a case arising under the registry laws, nor did it pretend to adjudicate any question between incumbrancers, or to priorities determinable by these laws.   It was a case arising under the statute of fraud, in which an insolvent debtor, with intent to defraud his creditors, executed a deed of trust to recover antecedent debts.   Nor does the statute make any difference between conveyances made to secure present and antecedent debts.   The registry is intended to give notice, and is constructive notice to every person dealing in the premises, and if notice is given, though the deed is not recorded, the very object in requiring a registry, to-wit: The giving of notice to subsequent parties, is effected.

In the case at bar, there was no notice, actual or constructive, to complainants when they took their mortgage in February, 1867, that Swank had made the contract on the 20'th of December, 1866, and agreed by it to subject, by way of mortgage, to the payment of the note due to ·Harper, the saw-mill he had purchased of complainants, and had not been paid for.   Swank was in possession of the saw-mill, and the contract with the Harpers was not upon record.   Actual notice is not pretended, and there was no constructive notice by the registry of the contract.

But it is said the mill was a fixture to the realty, and passed for such with it.   On this subject of fixtures, there has been, and is yet much uncertainty and perplexity in the

vendor of land. But no principle known to us will justify the court in declaring the mill in their care to be a fixture.

The modern rule looks to the intention of the party and the circumstances surrounding the case, to determine the intention of converting personalty into realty. Here in this state, in the case decided by Judge Jeffords, it was held that where a party sold a cotton plantation, and there was on it a cotton-gin, it would be supposed that the cotton-gin passed as part of the realty. Such a decision being usual and common, and necessary to the proper use of the realty on a cotton plantation. But if a tenant had bought and put upon the place, after deliverance, a cotton-gin, to gin his crop, the court, in the absence of positive evidence to that effect, would not hold that it was the intention of the tenant to convert his personal property, bought for his own use and convenience into realty, and to give it to the landlord. Such a ruling would be simply absurd.

But the facts in the present case negative the idea of any intention on the landlord's part, to convert the said mill into realty, and to pass it, as such, to the Harpers. He rented the land in 1866, as a cotton plantation. During the lease, and before his contract was reduced to writing, he purchased the saw-mill of complainants. When the Harpers entered into the contract of sale, on the 20th December, it is very clear that both parties regarded the saw-mill as the property of Swank, as in fact it was, and never for an instant supposed that Swank, by buying the land from the Harpers, on which his mill was situated, thereby changing his own personal property into realty, or so affixed it as to give Harper a claim to it. This is very clear, from the contract. The Harpers had some personal property on the place, consisting of mules, cows, oxen, cotton-gin, corn-mill, and blacksmith shop. So distinct was the understanding between the parties that these things, notwithstanding the sale in December, remained the property of the Harpers, and were not to become the property of Swank unless he paid the two installments falling due in January and April. So, when the stipulation in the

contract of December is made for security, on the part of Swank, for payment of the sums payable in January and April, it is provided that the Harpers may take possession of the personal property before mentioned, and sell it to pay the debt; " and all other property placed upon said plantation, or there found upon said plantation," clearly referring to the saw-mill, etc., which Swank had previously bought and put upon the place, and thus showing that both the Harpers and Swank considered the saw-mill as distinct from the realty, and the personal property of Swank, or such a stipulation would not have been made.

*Harris & Withers*, for the appellees.

The recording of the mortgage to Perkins, Livingston & Post was not authorized by law, on account of the defective acknowledgment; and this we affirm in spite of the decision in Smith v. Williams, 38 Miss., 48, which is not sustained by the cases cited. See 1 McLean S. C. R., 242; 4 How. Miss., 13. The term executed, as applicable to deeds, expresses a legal conclusion from certain facts. If we were examining a witness to prove " execution," his statement that he saw the deed executed would not suffice. He would be required to state what he saw—the signing, sealing and delivery. These are the facts on which is predicated the legal result " executed." The statute substitutes the acknowledgment for the proof. The statute itself recognizes the distinction. It uses the term " execution " of the deed, as the result of certain acts. The acknowledgment is of the acts done which make execution. The commissioner or other officer's opinion as to whether the deed has been executed, much less that of the grantor, is not to be relied on. They may not know that delivery is essential, or that a seal is essential to execution, but they know what is signing a deed, what is sealing and what is delivery, and because they are supposed to know these facts and to comprehend them, they are called upon to acknowledge and certify them.

But it is not essential to the decision in this case that this proposition shall be established in our view of it. The mort-

gage is subsequent in date to the title bond or contract of sale, and was given for a pre-existing debt, and for this reason the mortgagees are not innocent purchasers for value. They may lose their security, but they parted with nothing to obtain it. There was no advance of money or other valuable interest parted with on the faith of the mortgage. Pope v. Pope, 40 Miss., 518; 41 Miss., 384; Rollins v. Callender, 1 Freeman's Miss. Ch. Rep., 295. But there is another conclusive objection to the mortgage as constituting a prior lien as against the title bond and its stipulations. It does not purport to convey title to the mill, although it guarantees title. It is a conveyance which imparts a doubtful or a qualified interest or title. What it conveys depends entirely on the extent of the interest of the grantor. Kerr v. Freeman, 33 Miss., 293; Smith v. Winston, 2 How., 601.

The title bond, with its reservation of rights, was prior in point of time, and, as against appellant's mortgage, prior in right. The legal effect of the reservations contained in the title bond of the Harpers to Swank was in default of payment of a pledge of the personalty as a security for the debt, and in effect created a lien in the nature of a mortgage with a power of sale. 4 Kent Com., 161, margin, 147.

The doctrine is now well established, that a mortgage may include future acquisitions; and a mortgage of the rolling stock now on a railroad, and all that may hereafter be put on it, has been held to be valid. Pennington v. Coe, 23 How. U. S., 117; 6 Am. Law Reg., 27; Minnesota Co. v. St. Paul Co., 2 Wallace. If personalty, the mill machinery was bound by reservations in the contract of sale. If it was part of the realty as a fixture, it was not the subject of a mortgage, because the title to the land remained in the Harpers. This court has decided after a very careful examination of the authorities (by Jeffords, Opinion Book), that a gin and machinery erected by the owner on a cotton farm is a fixture; that where the machinery is attached to the freehold, and is connected with the uses to which the land is devoted, it is a fixture and passes to a purchaser.

It is true that machinery connected with a trade and put on land by a tenant, is generally regarded as detached from the land and is subject to removal; but in this case, Swank erected the mill after he had agreed to buy the property—after the terms were agreed on, and it is manifest that he regarded himself as the owner, at the time he put the mill on the place, and the intention is fixed, which is material. He cut timber freely and made lumber and supplied the market accessible to him. On the subject, see 1 Washburn Real Property, p. 15, 16, and 17, sections 20–25 and 26; saw-mill held to be fixture, Van Ness v. Pacard, 2 Peters, 137.

The intention of the parties is manifest. The mill was erected by a party intending to become the owner, and as he declared, with a view to enhance the value of the estate by making the timber available as a source of profit. The mill being part of the freehold, the title to it was in the Harpers, who held the legal title to the land, as security for the purchase money. The mill, it seems, was on the land at the time the title bond was executed, so that no intervening title can cut out the lien reserved by the Harpers. The bill admits he held under a contract of purchase. The appellants were chargeable with notice of the title of Swank. No vendee or mortgagee can be heard to assert that he made no inquiry into the title of his vendor. Vattier v. Hinds, 7 Peters, 21; 37 Miss., 50; 40 Miss., 518; 41 Miss., 348; 1 Yerger Tenn. Rep., 366; Brush v. Udes, 15 Peters, 94.

In reply to the position of Mr. Yerger, that it is only in cases where the purchaser seeks to escape from the consequence of a fraudulent conveyance or conveyances, invalid by the statute of frauds and perjuries, that he is required to sustain the character of a purchaser who has paid or surrendered some right, etc., we refer to the case decided by Justice Simrall, at the May term, Parker v. Feister Foy* and all other cases of equitable liens and claims, contending against subsequently acquired *legal* titles where no question of fraud arises, being in direct opposition to this

*Supra, p. 260.

distinction. In the case of Callender v. Rollins, Freeman Rep., 295, in which the doctrine is recognized, is not a case of fraud. The rule on the subject is founded in this principle. A party has parted with his property on the faith of a lien or encumbrance which does not give the legal title, or which, for want of registry, conveys no *notice.* A party without warning of this lien, buys or takes an encumbrance, with the advantage of a legal title. A court of equity will give effect to the maxim *qui prior in tempore potior est in jure,* unless the subseqent purchaser can show that he has an equal equity, in point of merit. To constitute this equal equity, the subsequent purchaser must have paid or parted with some right on the faith of the conveyance, so that he will suffer a loss. Having no notice, and having paid, he is entitled to the claims of a court of equity, and having the legal title, will prevail.

The registry does not impart superior efficacy to the conveyance as a conveyance of interest or title. The precise advantage which a registered conveyance acquires is that no *subsequent purchaser* can set up want of *notice* of it. The term "purchaser for valuable consideration without notice," is found in the registry acts, and not in the statute of frauds. Its meaning, as defined in the courts of equity, is the same wherever used in the statutes. Vetier v. Hinde, 7 Peters, 271; Boon v. Chiles, 10 Peters, 210, 211. These cases are leading, and do not arise under the statute of frauds. See Boon v. Barnes, 23 Miss., 136; 1 Devereux Ch. R., 103; Halstead v. Bank of Ky., 4 J. J. Marshall, 334.

SIMRALL, J.:

On the 29th of November, A. D. 1865, Harper leased a plantation in Tallahatchie county, with the mules, stock, etc., to Swank, for the year 1866, for forty bales of cotton. Special lien was taken on the crop to secure the rent. In August, 1866, Swank proposed to purchase the property. The terms seem to have been agreed upon verbally. About the close of the year, December, the contract was reduced to writing. Swank was to pay $50,000 for the property, $5,000 1st Jan-

uary, 1867; $5,000 1st April, 1867, and the balance in three annual installments. If the payment due 1st January, was not met, the Harpers were at liberty to take any' of the property and sell it. If the note due 1st April, was not met, the vendors could take possession of any of the property sold, or placed on the premises by Swank, and sell to pay the debt; and they were also authorized to work and finish the crop, paying expenses thereof, and also compensation to themselves. Should Swank take up the note due 1st January, there was to be an abatement of ten bales from the forty, for the rent of 1866. If he met the second note, all claim on the mules, stock, etc., to be released, and they to be at Swank's risk.

On the 13th of February, 1867, Swank made his promissory note for $1,000, at sixty days after date, to Perkins, Livingston & Post, and also executed to them a mortgage on a certain steam saw-mill engine, with appurtenances then on the plantation purchased of the Harpers. And on the —— day of April, following, Perkins, Livingston & Post exhibited their bill in chancery against the Harpers and Swank, to enjoin the former from the further prosecution of an attachment for rent, which had been levied on the mill, engine, and appurtenances, and seeking a foreclosure of their mortgage. The Messrs. Harper claim in their answer : that the mill and engine are fixtures on the plantation agreed to be sold to Swank; that by the terms of the contract, Swank's possession was to be conditional, liable to be defeated on failure to pay the notes, whereupon they took or retained possession of the land, mill, and engine, and R. W. Harper was in possession the day of the date of the mortgage; admit that the attachment was levied for rent due, of $6,000; insist that the mill and engine are fixtures to the freehold, and deny that Swank had any interest which he could mortgage.

It thus appears that the controversy is between the plaintiffs in error as mortgagees, and the Harpers, under the contract of sale to Swank, and their attachment for rent.

Perkins, Livingston & Post, assert that their right is paramount under the mortgage, because their mortgage was recorded in due time, and the equitable lien of the Harpers exists by virtue of their contract with Swank, which never was recorded at all, and that they are entitled to the precedence from the date of the registration.

For the Harpers, it is contended that the doctrine of innocent purchaser, or encumbrancer, does not apply in favor of Perkins, Livingston & Post, and therefore they have the elder and superior equity.

The innocent purchaser is the especial favorite of a court of equity, and his title will be carefully protected. He is an innocent purchaser who buys the legal estate and pays the purchase price, without knowledge of an outstanding equity. The purchaser of an equity is bound to take notice of any prior equity. If he takes the legal title without notice of the equity, his conscience being clear, his adversary will be left to his legal remedy. His right is complete by paying the money and taking the deed. Foy v. Parker.* As the advantages are great; in pleading, the right must be distinctly set forth, that the vendor was seised, and in possession; the consideration must be stated, and that it was truly paid; notice must be denied down to the delivery of the deed and payment of the money. 3 P. Williams, 2801 8 Wheat., 449; 12 Wheat., 502. The title purchased must be apparently good and perfect at law. 1 Cranch, 100; 1 Wash. C. C. Rep., 74. The purchaser of an equitable title holds it subject to the equities upon it in hands of the vendor, and has no better footing in a court of equity than his vendor. Sugden on Vend., 722; 7 Cranch, 48; Boone v. Chiles, 10 Peters, 210.

If both parties claim by an equitable title, he who is prior in time, is deemed better in right. Where the equities are equal in merit, the law prevails. To constitute an innocent purchaser, some new, present consideration must pass, which may be money, property, or the satisfaction of an existing

*Supra*, p. 260.

security. The purchase of property under one's own judg-
ment for an antecedent debt, without paying any new con-
sideration, does not constitute such a purchaser. Arnold v.
Patrick, 6 Paige Ch. R., 316; Jackson v. Campbell, 19 John.
R., 282. In Vattier v. Hinde, 7 Peters' R., 270, the convey-
ance was in part satisfaction of an indebtedness. No money
was paid. Therefore, it was said " that this purchase could not
avail, for he was bound to notice the equity of Doyle." If a
party take a security, or specific property, in satisfaction
or discharge of a pre-existing debt, he is a *bona fide* pur-
chaser, and is not affected by previous equities of which he
had no knowledge. Swift v. Tyson, 16 Peters, 1–24; Brush v.
Scribner, 16 Conn., 388. In Dunlap v. Bennett, 5 S. & M.,
710, a deed of trust was made to secure sundry debts. It
was held that it was good against the vendor's lien, as to all
the debts originating after the conveyance was made; but
not so as to the antecedent debts.

In Pope v. Pope, 40 Miss. R., 517, a deed in trust was exe-
cuted to Brantly, trustee, to secure certain debts due to D.
B. Nabors & Co. Speaking of this deed, the court say:
" They do not occupy the attitude of purchasers without
notice, because it was not an absolute conveyance, but a
mere security for their debt, and that, a pre-existing one. In
such cases it is settled, a party does not come within the
third article of the statutes of frauds in favor of *bona
fide* purchasers." The court refer to Pack v. Harney, 4
S. & M., 255. That case turned on the points whether
the conveyances (deeds in trust) were void on their face as
to creditors, and whether the trustee and *cestui que trust* must
participate in the scheme and intent to defraud. *Arguendo,*
the court say: " The statute protects a *bona fide* purchaser,
because he parts with his money under belief that he is
getting a title uncontaminated with fraud. But the creditor
parts with nothing. The giving of the deed of trust does
not extinguish his debt, nor did he contract on the faith of
such security. He is not a purchaser, nor does he part with
his money for an interest in the land."

Counsel for the plaintiff in error impugns the soundness of the judgment in Pope v. Pope, and invites us to reconsider it. We concur in the decision, limited and controlled by the facts of the case. If the court meant to be understood that a mortgage or deed in trust, resting upon a present and contemporaneous valuable consideration, could not entitle the mortgagee to the protection of the statute, as an innocent purchaser, we are not prepared to say that we concur in that doctrine. But in so far as the court declares that a deed in trust or mortgage executed to secure a pre-existing debt, does not make the mortgagee a purchaser for value, so as to avail of the statute, we think is in accord and harmony with the authorities; and that was really the only point for adjudication.

Perkins, Livingston & Post sold the mill, engine, and appurtenances to Swank, in 1866. It was purchased with a view to use on the lands contracted to be purchased from the Harpers, and had been set up and put in operation before the execution of the mortgage. The note for the $1,000 was the continuation of the pre-existing debt for the mill and engine, and the mortgage was a security for such debt. It is evident that Perkins, Livingston, & Post parted with no new consideration, either in money or property. Nor did they "accept property or extinguish a pre-existing debt" which would entitle them to protection. They are not *bona fide* purchasers for valuable consideration therefore, and are not in an attitude to successfully oppose the prior equity. If notice of the prior equity is imparted to an innocent purchaser, for value, before he has paid any or all the purchase money, although he has his deed, the equity takes hold of so much of the price as is unpaid. Foy v. Parker*

It were difficult to see, in the circumstances of the parties, how Perkins, Livingston & Post could be innocent purchasers. Their mortgage, in referring for description to the property, says that it is on the property purchased by Swank from the Harpers. Purchased how, and to what extent? By abso-

*Supra*, p. 260.

lute deed of conveyance? None such was of record, as investigation would have shown. If the possession of Swank was under and in right of purchase and by claim thereof, such possession could be notice only of the character of title, legal or equitable, which he had; and strangers dealing with him, take the risk of the extent of his estate and interest in the property.

It was said by the court in Dixon v. Lacoste, 1 S. & M., 107, " that possession by the vendee is evidence to creditors and purchasers of the conveyance " (unregistered). In that case the contest was between the lien of a judgment creditor of the vendor, and the vendee in possession under an unregistered deed. We suppose the principle meant to be asserted, is, that possession, of a vendee, is notice of his title, whatever it is. The possession is a fact to put creditors and purchasers on inquiry as to the nature and extent of the estate of the vendee, and has the effect of charging with knowledge of his actual estate and title.

If we are correct in our apprehension of the principle, Perkins, Livingston & Post had notice of the interest of Swank in the property bought from the Harpers. That interest was an equitable title under his contract of purchase, the stipulations of which operated to create a lien on all the property on the plantation, and empowered the Harpers to sell all or any of it, to satisfy certain installments, if not punctually met. Default had been made by Swank, in paying the installments of 1st January and 1st April.

Are the mill, engine, etc., fixtures to the freehold? There is a very full discussion of the law of fixtures in Van Ness v. Pacard, 2 Pet., 147. In that case, the defendant erected a dwelling-house two stories high, a cellar of stone, and brick foundation, and a brick chimney—the brick chimney let into the ground. This was all done with a view to carry on the business of a dairyman. The defendant was tenant for years. It was conceded that the rule of the common law is, that whatever is annexed to the freehold, becomes part of it, and cannot be removed, except by the owner of the inherit-

ance. But there were always exceptions in favor of trade and manufactures, and the latitude was broad in favor of the tenant against the landlord, but strict in favor of the heir against the executor or administrator.

The principle is now firmly established that fixtures erected for the purposes of manufacturing, or for a trade, are, in favor of the tenant, personalty, and he may remove them.

The English courts seem to have made no relaxation in favor of erections for agricultural uses. Elwes v. Maw, 3 East's Rep., 38. But it is otherwise in the United States. In the case quoted from 2 Peters, the buildings were held to be personalty. There has been a considerable modification of the old rule, that the erections must not be attached to the freehold, so as to be incapable of removal without some disturbance of the soil. In Lanton v. Lanton, 3 Atk., 13, the shed in which the engine was placed, was made of brick and stone. In Penton v. Robart, 2 East's R., 88, the building had a brick foundation let into the ground, with a chimney attached.

The leading test to determine whether a thing be a fixture or not, is to look at the intention with which it was put on the land. Steam boilers and engines used, in a marble mill, pass as a part of the realty by a mortgage of the estate by the owner. Sweeter v. Jones, 35 Verm., 317. So a steam engine placed in a shop or factory to create the moving dower—the engine and shafting would be a part of the realty, and would pass by deed or mortgage. Hill v. Wentworth, 28 Verm., 428. Whatever erections are put upon the premises by the mortgagor, inure to the benefit of the mortgagee, as part of the realty. Hays v. Doane, 3 Stock., 96; 1 Wash. Real Prop., 17, p. 26 *a.* It is evident that Swank bought the machinery after he had made the verbal agreement to purchase. Whether put on the premises before or after the contract was reduced to writing, is not clear from the testimony. His intent was to use it in converting timber into lumber for the market. This he had no right to do as tenant, or under any stipulation in his lease. He did

erect the mill, and apply it to make lumber, which he could do only as vendee. His agreement with the Messrs. Harper conferred on him the equitable title to the premises. At its date, the mill and machinery were on the land, or were shortly after put up, and thereby became subject to the lien reserved, which covered whatever of property Swank then had, or should put on the premises.

We are inclined to the opinion that whatever fixtures Swank put on the land in his claim and right as purchaser, became part of the realty, and inured to the benefit of his vendor's equity, or lien on the land. The mortgagor, after forfeiture, especially, has but an equity of redemption; yet all improvements which are put on the property and attached to the freehold, become fixtures, and are part of the realty.

If Swank had not changed his relation to the Harpers from that of tenant to that of vendee, we would have no difficulty in holding that he would have a right at the termination of his tenancy, to remove the mill, engine, and appurtenances, and that it would have been personalty, and that he had power to encumber it by mortgage or otherwise.

If Perkins, Livingston & Post had taken a mortgage at the time of the sale of the mill and appurtenances, and before it was erected on the premises, we are of opinion that the mortgage would have prevailed, as against the Harpers. For at that time the property had not been converted into realty or become a fixture on the freehold, nor had the lien in favor of the Harpers under the contract taken hold of it.

It is urged in behalf of the Harpers that the mortgage to Perkins, Livingston & Post was not properly acknowledged, and therefore improvidently admitted to registration. Its sufficiency is sustained by the case of Smith v. Williams, 38 Miss. R., 56, decided in 1859. We are requested by counsel to review that decision. If we doubted the correctness of that adjudication, we should forbear to call it in question *now*. It establishes a rule of property, and the consequences in disturbing the titles to property which have been made in conformity to it, would be disastrous in the extreme. The

registration of the mortgage is also relied on as giving a superior right to Perkins, Livingston & Post. The policy o this statute is to make the registration *notice* to subsequent purchasers and creditors. All deeds of trust and mortgages are void as to creditors and subsequent purchasers for valuable consideration without notice, unless recorded. Rev. Code, art. 21, p. 310. If the purchaser, however, has notice of the prior unregistered mortgage, the statute does not declare what shall be the consequence. As to his title, that is left to the control and operation of the general equity law. If the subsequent purchaser or creditor has knowledge of a title or equity derived from, or created by his vendor, elder than his purchase, although he pays a price deemed valuable in law, his conscience is affected, and these statutes do not afford him protection.

Let the decree of the chancellor be Affirmed.