LOREN P HARRIS *v.* ASHER HAYNES.

*Mortgage.   Fixtures.   Trespass.*

As between a mortgagee and a vendee of the mortgagor with notice, *held* that
    a steam engine, boiler, the arch mouth in front of the boiler and the iron
    plate under the boiler, which furnished the motive power for a machine
    shop, together with the shafts and pulleys connected with the engine, were
    fixtures.

A mortgagee after condition broken is entitled to possession of the premises,
    and may    aintain trespass *qua. clau.* for an injury thereto.

On the facts reported by the referee, *held* that it did not sufficiently appear that
    the breach of the condition was before the alleged trespass and there-
    upon the report was recommitted.

At a subsequent time the referee having reported that the breach of the condition
    was prior to the alleged trespass, the court gave judgment for the plaintiff
    for the value of the engine, arch mouth, and iron plate and the shafting
    and pulleys.

This is an action of trespass, *quare clausum fregit*, for breaking and entering a certain carriage shop, and breaking, taking down, and carrying away certain articles of property, a list of which is given in the report of the referee hereinafter printed. The case was referred by agreement of parties and the referee made the following report:

Lucius M. Harris, a brother to the plaintiff, being the owner of the equity of redemption, and in possession of certain premises, mortgaged the same to the plaintiff by deed on the 13th day of September, 1855, with a carriage shop thereon, and all the tools, fixtures, and machinery in said shop, subject to the conditions mentioned in said deed, and said deed was recorded in the town clerk's office, in said Wilmington, where the lands conveyed were situated, on the same day it was executed. At the time of the execution of said mortgage, the plaintiff had signed notes with said Lucius M., and as surety for him, to the amount of one thousand dollars, which he subsequently paid, and no part of the same has been repaid to him. The defendant previous to the execution of the bill of sale and lease, hereinafter mentioned, and executed by said Lucius M. to the defendant, knew of said mortgage and conversed with the plaintiff in reference to the same a short time before the execution thereof.

On the third of May, 1856, the said Lucius M. Harris, being indebted to the defendant, executed to him a bill of sale and a lease of a portion of the premises conveyed by said mortgage, including the carriage shop, as collateral security.

Previous to the 10th day of September, 1857, and on or about the first day of that month, the defendant entered the carriage shop, removed therefrom one steam engine, two boilers used for generating steam to propel the engine, an iron arch mouth upon which the front end of the boilers rested, and an iron grate upon which the wood was laid for heating the boilers, the main horizontal shaft used for propelling the machinery and two smaller ones, two stoves and pipe used for warming the shop, one turning lathe, circular saws and arbors, one grindstone, and a quantity of belting, all of which he claimed under, and by virtue of said bill of sale. Said articles are all specified in said bill of sale unless the boilers may be regarded as an exception and is the same property described in the plaintiff's declaration.

There was annexed to the main shop, on the west end, a building twenty-three feet long by eight feet in width, which was erected for the express purpose of accomodating the boilers, and in which the chimney, brick-work, and boilers were placed. The rafters of this building were mitered to the main shop and spiked to it, but it was in no other way framed or attached thereto.

The boilers were set in brick work, the front ends rested upon a cast iron arch mouth, which was purchased with the boilers and accompanied them, the other end penetrated the chimney The brick was laid up around the boilers at the sides something more than half way, so that in removing them it became necessary to remove one or two tiers of brick from one side, and I find that the brick work was damaged to the amount of three dollars in the removal of the boilers, but no unnecessary injury was done. If the plaintiff is entitled to recover therefor from the facts reported, I find him entitled to said sum of three dollars.

There was a hole where wood was taken in, in the end of the small building, but not large enough to pass the boilers through; and to get them out of the building one or two boards were taken off and replaced so as not to injure the building. This was the most convenient and prudent way of getting the boilers out of the building.

The boilers were connected to the engine by two pipes, a water and steam pipe, of cast iron, passing through the west end of the main shop and confined both to the boilers and engine by means of flanges and bolts ; and so arranged that by unscrewing the nuts from the bolts the bolts could be taken out and the pipes easily removed from either or both.

Two upright posts and a sill or bed piece resting upon the floor in the main shop, constituted the frame into which the engine was placed and from which the defendant removed it. The posts were fastened at the top by planks into which notches were cut so as to fit the posts, and the planks were spiked to the joists overhead. The posts were placed in these notches in such a way as to secure the top, and the bottoms were attached to the sill or bed piece, and they were not otherwise fastened to the building.

The engine rested on the sill, and was fastened to it by a bolt which passed up through the sill, and a flange upon the bottom

and foot of the engine, with a nut screwed on to the bolt so as to fasten the engine firmly. It was removed by unscrewing the nuts and raising it from the bolts.

The regulator to the engine was placed in a frame back of the engine frame and so .fastened that it could be removed by displacing a bolt, and that was removed without otherwise disturbing any thing in the building and without injury thereto.

The turning lathe was upon a frame, the legs of which set upon the floor, and was confined by an upright piece of slit work the foot of which stood upon a table or frame, and the top braced or confined to the floor above, and made sufficiently tight to secure the lathe without any other fastening. It does not appear to have been otherwise fastened to the building.

The circular saws taken were confined in tables, fastened to their place in the manner of the lathe, and so confined in the table that by removing a key the arbor and saw could be taken out without injury to the table or building.

Hangers were framed or bolted to the joists over head, and cast iron boxes were attached to the hangers by the use of bolts. The defendant unscrewed the nuts from the bolts, and took them out, and by so doing removed the boxes and the shafting, without otherwise disturbing the hangers or building. The grindstone was not fastened to the building. There was no damage done to the main shop or any of its fixtures, by the removal of the machinery therefrom.

The main shop was built by the said Lucius M. Harris about two years previous to the time when the engine was procured, and was used for a carriage shop, without either steam or water power. After the introduction of steam it was used for other purposes.

The defendant took possession of said shop under his lease, on the 3d of May, 1856, and occupied the same together with the property sued for, during the continuance of said lease.

At the expiration of said lease, the defendant surrendered his possession of the premises leased and the property declared for to said Lucius M. Harris, who continued in possession until January, 1858.

The plaintiff did not foreclose his mortgage or take possession of the premises under the same, until January, 1858.

Lucius M Harris was not indebted to the plaintiff at the time of the execution of the plaintiff's mortgage, nor was the plaintiff liable for debts of said Lucius, except upon the notes signed by him as before stated, and it does not appear that he is under any additional liability for said Lucius M., at the present time ; or that said Lucius M., is indebted to him except for the money and interest paid upon said notes, amounting to about one thousand dollars.

At the time of the commencement of this suit, the plaintiff had paid on such note five hundred dollars, and upon another two hundred dollars. The balance of his liability has been paid by him since.

On the 15th day of May, 1858, Lucius M. Harris executed a quit claim deed of the premises, mortgaged to the plaintiff, to the defendant.

The court at the April Term, 1859, REDFIELD. Ch. J., presiding, rendered judgment *pro forma*, on the foregoing report, for the plaintiff to which the defendant excepted.

*Davenport & Haskins*, for the defendant.

*C. K. Field* and *D. Kellogg*, for the plaintiff.

KELLOGG, J. This is an action of trespass *qu. claus. et de bonis aspor.*, with a count in trover joined under the statute. The controversy in the case involves the rights of the parties respectively in certain articles of property which the plaintiff claims as fixtures, or in the nature of fixtures, constituting a part of the realty of a certain carriage shop in Wilmington, and which the defendant claims as personal chattels. Both parties derive their title or right to these articles from Lucius M. Harris, a brother of the plaintiff,—the plaintiff by a mortgage deed, dated 13th November, 1855, and the defendant by a bill of sale dated 3d of May, 1856 ; and it is conceded that if the articles sued for were fixtures, or so annexed to the realty as to have become essentially merged in or incorporated with it, they passed to the plaintiff by the mortgage deed, and, on the other hand, that if they are to be considered as retaining their character and iden-

tity as personal chattels, notwithstanding their annexation to the realty, they passed to the defendant by the bill of sale. No question is made respecting the entry, severance, and asportation alleged in the declaration, and the defence rests upon a justification by the defendant of the acts complained of, under and by virtue of the bill of sale.

The law of the subject of fixtures having been elaborately considered and discussed by this court in three recent cases, *Hill* v. *Wentworth*, 28 Vt. 428. *Fullam et al* v. *Stearns et al*, 30 Vt. 443, and *Bartlett* v. *Wood and Trustees*, 32 Vt. 372, the case is to be determined by the rules and tendency of the decisions in those cases, and does not call for a discussion of the principles recognized and settled as rules of property in reference to articles of this character by those decisions. It is sufficient to say that the leading principle resulting from those decisions is that actual annexation to the freehold, and adaptation to its purposes, is not sufficient to convert chattels into fixtures, unless they are fastened in such a manner as to show an intention to incorporate them firmly with the inheritance, and that if articles of machinery, used in a factory for manufacturing purposes, are only attached to the building to keep them steady and in their place, so that their use as chattels may be more beneficial, and are attached in such a way that they can be removed without any essential injury to the freehold, or to the articles themselves, they still remain personal property. The application of this principle to the facts reported by the referee in this case determines the character of the lathe, arbors, and saws, the grindstone, the belting, and the stove and pipe to be that of personal chattels ; and, as the plaintiff took no possession of these articles before they were removed from the shop by the defendant, they are to be considered as having passed to the defendant by virtue of the bill of sale,— he having the superior right by virtue of his priority of possession,—and this character was given to each of these articles, when affixed to the building in a similar manner, and employed in similar uses, in the case of *Bartlett* v. *Wood and Trustees*, above referred to. The controversy in this case is therefore reduced to the determination of the character of the

16

remaining articles, viz : the engine and the boilers, the arch-mouth upon which the front ends of the boilers rested, and the iron grate upon which the wood was laid under the boilers, and the shafts and pulleys attached to or connected with the engine,—these being the only other articles in respect to which the plaintiff claims damages in his declaration,—and the question to be decided is whether these articles should also be considered as personal chattels, or should be treated as fixtures and a part of the realty. In view of the facts reported, it is obvious that these articles were so connected with each other in reference to the object and purpose of their annexation, and their adaptation to the use of the shop, that the same rule of decision is applicable to each alike.

The report of the referee states that the main shop was built about two years previous to the time when the engine was procured, and was used for a carriage shop or factory, without either steam or water power, and that, after the introduction of steam power, it was used for other purposes, and the machinery in the shop was propelled by motive power supplied from the engine and applied by means of the shafts and pulleys connected with it. We find nothing in the case in reference to the mode and extent of the annexation of the engine to the realty which is inconsistent with its character either as a chattel or as a fixture, and the determination of its character in this case must rest on the object and purpose of the annexation. In the case of *Winslow et al.* v. *Merchants' Insurance Co.* 4 Metc. 306, a steam engine and boilers, placed in a building designed for the manufacture of steam engines and other heavy iron work, and furnishing the motive power to the machinery used in the building, were, with the machinery adapted to be used by such engine by means of connecting bands and other gearing, held to be fixtures, or in the nature of fixtures. The principle of this case is recognized and adopted in *Hill* v. *Wentworth ubi supra*, in which it was held by this court that the iron shafting put up in a paper mill for the purpose of turning and putting in motion the machinery by means of hangers of iron bolted to the beams and sills of the building, was a constituent part of the mill, on the ground

that the shafting was necessary to communicate the motive power to the machinery, and should be regarded as much a part of the mill as a water.wheel would be, if water applied by means of it furnished the motive power of the mill. We regard the principle thus settled in the case of *Hill* v. *Wentworth* as applicable to and decisive of the subject matter now under consideration, and understanding from the facts reported in this case the object and purpose of the annexation of the engine and its adjuncts to the realty to have been the furnishing of motive power to the machinery of the shop, and having reference to the manner in which they were fitted and adapted to the shop and the business there carried on, we are of opinion that the engine and boilers, the arch mouth and grate, and the shafting and pulleys, should be regarded as fixtures and parcel of the realty. *Richardson* v. *Copeland,* 6 Gray 536.

The question then arises, whether, on the facts reported, the plaintiff can recover of the defendant, in this action, for entering the shop and taking down and carrying away these articles, on either of the counts in trespass or on the count in trover. This question must depend upon the plaintiff's right to the property at the time of the alleged trespass and conversion. The action of trespass *quare clausum fregit* is founded on possession, and not on the right of property ; yet, in this State, the possession, in a case where there is no adverse holding is considered as following the property, and is deemed to be in him who has the legal seizin or title ; and the owner is enabled by such a constructive possession to maintain trespass, unless the injury is done to a tenant in actual possession. *Robinson* v. *Douglass,* 2 Aiken 364. But an action of trespass cannot be supported without an actual or constructive possession of the property by the plaintiff at the time when the injury was committed ; and so, in order to support trover, the plaintiff must, at the time of the conversion, have had a property in the chattel, either general or special, with the actual possession, or the right to immediate possession. In this State, the mortgagee is regarded as having no right of entry until the condition of the mortgage is broken, ( *Wilson* v. *Hooper & Downer,* 13 Vt. 653 ; *Lull* v. *Matthews,* 19 Vt. 322 ; *Wright & Ainsworth* v. *Lake,* 30 Vt. 206,) and, until condition broken, the

mortgage is treated as being only a lien upon, and not a title in or to, the land, and the mortgagor may, until the happening of that event, retain the possession of the land even as against the .mortgagee. Before such breach, the interest of the mortgagee is contingent, and may be defeated by the payment of the money secured by the mortgage according to the condition. After condition broken, the mortgagee becomes at law the absolute owner of the estate, and is entitled to the immediate possession, and this right to the immediate possession of the estate has, in our courts, been regarded as sufficient to support the action of trespass. In Massachusetts, a mortgagee not in actual possession may, after condition broken, maintain trespass against the mortgagor for cutting and carrying away to market timber trees standing on the premises. *Page* v. *Robinson, et al.* 10 Cush. 99.

The plaintiff's action must therefore rest for its support exclusively on the ground of an injury to his possession or right of immediate possession of the mortgaged premises existing at the time of the injury complained of, and it cannot be sustained on any other ground. The plaintiff was not in the actual possession of the property conveyed by the mortgage at the time of the alleged trespass and conversion by the defendant,— the shop being then in the possession of the mortgagor,—and he did not take actual possession of the premises, or foreclose his mortgage, until January, 1858, which was several months afterwards. As he was not in the actual possession of the mortgaged premises at the time when the alleged injury was committed, he must show affirmatively that, before or at that time, the condition of the mortgage was broken, so that he then had the right of immediate possession of the premises; and the time when the condition of the mortgage was broken thus becomes the material point in the case. The referee's report states that the entry, severance, asportation, and conversion complained of were one continuous act by the defendant, which was done "previous to the 10th day of September, 1857, and on or about the 1st day of said month," and that the shop was then in posession of the mortgagor. This suit was commenced on the 22d day of September, 1857, and it appears from the report of the referee that, at that time, the plaintiff had paid on notes which he had

signed as surety for the mortgagor the sum of seven hundred dollars, and that since the commencement of the suit, he has paid the balance of his liabilities on the same notes as such surety. We have no doubt that the condition of the mortgage covers and secures the indebtedness from the mortgagor to the plaintiff on account of the payment so made by the plaintiff as surety for the mortgagor upon those notes; but, clearly, there was no breach of that condition until those payments were in fact made. The referee only finds that, at the time of the commencement of the suit the plaintiff had paid seven hundred dollars on those notes, as above mentioned, and that there was no other liability from the mortgagor to the plaintiff, except that arising from those notes, then existing ;—but, in respect to the time when the payment of the seven hundred dollars on those notes was in fact made by the plaintiff, the referee furnishes no other means of determining, except the statement that the plaintiff had paid the same " at the time of commencement of the suit," and a statement that the plaintiff paid the whole amount of these notes subsequently to the execution of the mortgage, and it does not appear whether the notes were due at the time when either payment was made. For aught that appears in the referee's report, the payment of the seven hundred dollars which was the only payment made before the commencement of the suit might not have been made in fact until after the trespass and conversion by the defendant which is alleged as the ground of the present action. A breach of the condition of the mortgage, existing at the time when the injury, of which the plaintiff complains, was committed, being essential to the support of this action, it should appear affirmatively, and we cannot supply that fact by an intendment or inference which might be contrary to the truth of the case. As the facts reported only show a breach of the condition of the mortgage existing at the time of the commencement of the suit, and do not show that the breach existed at the time when the injury was committed, we cannot consider the plaintiff's right to the immediate possession of the mortgaged premises at the time of the alleged trespass and conversion as being either clearly or satisfactorily established.

In this situation of the case, we think that the report of the

referee ought to be re-committed to him for the purpose of ascertaining, upon the evidence already taken, or upon such evidence as may be introduced by the parties, whether the condition of the mortgage was broken before or at the time of the committing of the alleged trespass and conversion, as this is the point upon which the plaintiff's action must turn. The judgment of the county court in favor of the plaintiff is therefore reversed, and the report is ordered to be re-committed to the referee accordingly.

At the Windham County Supreme Court, February term, 1862, the referee made a further report in this cause, finding and setting forth therein, in addition to the facts previously reported by him, that the condition of the mortgage was broken before the time when the trespass complained of in the plaintiff's declaration was committed. The court thereupon rendered a judgment in this cause in favor of the plaintiff for the value of the engine, boilers, arch-mouth and grate, and shafting and pulleys, and for the damage to the brick work in removing the boilers, as reported by the referee, together with interest thereon from 1st September, 1857, the time of taking and converting said property, as damages.