EDWARD T. SWEETZER *v.* SAMUEL D. JONES, J. B. SPALDING AND E. N. SPAULDING.

[IN CHANCERY.]

## Mortgage. Fixtures.

A mortgagee of certain land conveyed another piece of land, and in such conveyance described the property so conveyed as subject to his mortgage. *Held*, that, as against the grantee and all persons claiming under him, the land conveyed was as effectually charged with the incumbrance of the mortgage debt, as if it had been expressly mortgaged therefor.

The boilers and steam engine in a marble mill, which supplied the motive power of the machinery of the mill, and were set up and used for the beneficial enjoyment of the mill, and substantially annexed to it, *held* to be fixtures and part of the realty, notwithstanding the machinery moved by the engine could be readily removed without injury to the building.

Saw frames in such a mill, fastened, at the top and bottom, to the building by bolts and nuts for the purpose of steadying the saws, *held* to be chattels and not fixtures.

PETITION for the foreclosure of a mortgage. The facts in the case fully appear in the opinion of the court.

*Peck & Colby*, for the orator.

*Redfield & Gleason*, for the defendant E. N. Spalding.

KELLOGG, J. This is a bill of foreclosure on a mortgage from the defendant Jones to Wentworth S. Butler, of certain lands, buildings, machinery, etc., in Roxbury, the mortgage having been duly assigned to the orator. The defendant E. N. Spalding, in his answer, states that, on the 21st December, 1857, he caused a portion of the real estate described in the orator's bill, with a steam engine and boiler situated thereon, and the tools and machinery, and all the personal property, in and about the buildings on said premises, to be duly attached on a writ in his favor against the Roxbury Verd Antique Marble Company, and that, at the March Term of the Washington County Court in 1858, he recovered a judgment against said company, and that, on the 28th June, 1858, he caused the execution issued on the said judgment to be levied upon the property so attached, and that the real estate so levied upon was duly set off to him on said execution, and that the said engine and boiler and other machinery and personal property so levied upon, was legally sold on the said execution; and he insists that the title of all the property so levied on, set off, and sold, was vested in the said company at the time of the said attachment, that, by virtue of said levy, set off, and sale, he obtained an absolute title to the real and personal estate included in the levy, and that the steam engine and boiler, and also the machinery, situated in the buildings on said premises, were personal chattels and subject to attachment as such. Under this sale and levy, this defendant by his answer makes a claim to a certain piece of land containing about six acres, with a mill upon it for sawing and manufacturing marble, and a stationary steam engine and the boilers and the saw frames in the mill. All the questions made in the case arise upon the answer of this defendant.

The title, on the part of the orator, to the property in controversy is derived from a mortgage deed from the "*American Verd*

Sweetzer *v.* Jones et als.

*Antique Marble Company*" to Josiah W. Butler, dated September 25th, 1855, executed to secure the payment of the sum of twenty-five thousand dollars. It ·is conceded that, at the date of this mortgage deed, the title to the six acre piece on which the mill was situated was in one Alvin Braley, although the mill was then used and occupied by the mortgagor. The title of Braley was conveyed to William Plumer by deed, dated March 5th, 1856, and Plumer conveyed the same title to the said Josiah W. Butler by deed, dated February 7th, 1857, and Josiah W. Butler conveyed the six acre piece to the " *Verd Antique Marble Company*" by deed dated March 10th, 1857, and the said last named company conveyed the same to the "*Roxbury Verd Antique Marble Company*" by deed dated April 18th, 1857. The two last mentioned deeds expressly subject the premises thereby conveyed to the incumbrance of the mortgage deed excuted by the "*American Verd Antique Marble Company*," to Josiah W. Butler, as above mentioned, and the deed from the "*Verd Antique Marble Company*" to the "*Roxbury Verd Antique Marble Company*" contains a provision that the grantee shall pay the said mortgage, and a statement that the agreement of the grantee to make this payment was a part of the consideration expressed in the deed. This mortgage deed having been assigned to the said Wentworth S. Butler, he commenced a foreclosure suit thereon against the *American Verd Antique Marble Company* and the *Roxbury Verd Antique Marble Company*, in which a decree of foreclosure, covering the six acre piece as well as the other real estate described in the mortgage, was made at the March Term of the Court of Chancery in Washington county, in 1858. The time allowed for the redemption of the premises having expired without payment of the decree, a writ of posseesion was issued upon the said decree, and the said Wentworth S. Butler was put in possession of the premises included in said decree, under and by virtue of the said writ, on the 3rd June, 1859.

The Chancellor rendered a decree of foreclosure against the defendants including the six acre piece on which the mill was situated. The Chancellor also held that the steam engine, boilers and saw frames in the mill were chattels and not fixtures, and therefore passed to the defendant by his levy already mentioned,

and that the orator had no claim thereto under his mortgage. From this decree the orator appealed.

From this statement of the case, it is apparent that this defendant, as a levying creditor of the *Roxbury Verd Antique Marble Company*, must stand upon the right which that company had to the property in controversy at the time of his attachment. We have not regarded it as our duty to consider the various objections which have been urged on the part of the defendant in respect to the defective execution of the mortgage deed to Josiah W. Butler, because no copy of that instrument has been furnished to us, and for the further reason that the deed from Josiah W. Butler to the *Verd Antique Marble Company*, under or through which the title asserted by the defendant must be derived, expressly subjects the six acres piece, upon which the property in controversy is situated, to that mortgage, and this, as against that company and all persons standing upon its right, must be taken as equivalent to a reservation of a lien on the property conveyed by the deed for the payment of the mortgage debt, and this would be just as effectual to charge the property conveyed with the incumbrance of the mortgage debt, as if it had been created by a valid mortgage deed. The only remaining question made in the case relates to the character of the engine, boilers, and saw frames,—whether they are to be regarded as fixtures, and so parcel of, or incident to, the real estate conveyed to the orator by his mortgage, or as personal chattels which were subject to the defendant's attachment and sale.

The following is a description of the property in controversy, as given by Mr. Belknap, whose testimony in this respect has been adopted by the parties as a statement of facts in relation to this part of the case :

" There are two boilers set in brick, on the outside of the main building; the boilers are covered by a single roof running against the building under the eaves. The engine is outside of the main building, covered by a building made for that purpose. Steam conveyed to the engine by a pipe some twenty-five feet. Engine sets upon granite base, bolted to the granite by six bolts and nuts,—granite supported by a stone wall. Attached to the engine is a crank shaft, on which is a fly wheel or pulley,—one

end of crank resting on the bed-piece of the engine, the other one on plumb block. The belting passes over the fly wheel to the main shaft. This lies horizontal over the beams. The shaft rests in iron boxes which are bolted to the beams, and upon main shaft on pulleys or drums over which belts pass to carry various machinery, to wit : six gangs of saws, horizontal saws, belting frames from main shafts to counter shafts, and crank shafts, which give the motion to the saws. These counter shafts have timbers run to the ground, and bolted with bolts and nuts to timbers a foot under ground. The shaft rests on boxes some foot and a half above ground bearings. There are five counter shafts with a pulley on each ; one drives two gangs of saws.

" There are timbers bolted above the beams to the beams, and the upright pieces are attached to those timbers, put in since the building was erected, for the purpose of steadying the saws. The upright or guides to the saws are fastened to the timbers above by a bolt and nut, and extend to timbers on the ground, and fastened to them with a cast iron step, put on to the bottom of the upright to keep it from rotting, and makes a kind of tenant in the building. The saws were put in after the building was finished, and could be removed without injury to the building.

" The boiler has brick work around it, and comes to about six inches of the top. To take out the boiler would disturb the top of the brick work, but not necessarily the arches. Thickness of brick, say eight inches, except next the main building, where it is some eighteen inches ; should think the boiler some four feet in diameter."

There can be no question but that the mill is a part of the realty, and that, as such, it would pass to a mortgagee, whether erected previous or subsequent to the date of the mortgage. In the recent case of *Harris* v. *Haynes*, 34 Vt 220, it was held that a steam engine and boilers which furnished the motive power to the machinery of a carriage shop, when annexed to the realty in a manner very similar to that in which the engine and boilers were annexed to the realty in this case, were fixtures and were to be regarded as parcel of the freehold ; and, on the facts which appear in this case in respect to the engine and boilers, and the manner and purpose of their annexation to the realty

Sweetzer v. Jones et als.

we are satisfied that the engine and boilers now in controversy fall within the rule of that decision, and should be treated as fixtures and a part of the realty. The rule of this decision is sustained by the uniform tenor of the American and English, cases upon the subject. 2 Smith's Leading Cases, 5th Amer. Ed., 249–51; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306 ; *Richardson* v. *Copeland*, 6 Gray, 536 ; *Walmsley, et al.* v. *Milne*, 7 J. Scott, C. B. Rep. N. S. (97, E. C L. R.,) 115. In *Hill* v. *Wentworth*, 28 Vt. 428, it is said that " whether the articles in question were personal property or fixtures, should be determinable and plainly appear *from an inspection of the property itself*, taking into consideration their *nature*, the *mode* and *extent* of their *annexation*, and their *purpose* and *object*, from which the *intention* would be indicated." In the application of this rule to the facts which appear in this case, we regard the engine and boilers as having been set up and used for the beneficial enjoyment of the mill and substantially annexed to it ; and the fact that the machinery of the mill, to which the engine supplied the motive power, was so put in or set up, that it could be readily removed to any other builing or quarry, cannot be considered as affecting the character of an actual and permanent annexation to the freehold. *Walmsley* v. *Milne, ubi supra.* In respect to the saw frames, we do not find in the manner in which they were fastened for use, any such annexation to the realty as would operate to change their character as chattels, and the decree of the chancellor directing that they should be considered and treated as personal property, is in accordance with the law of the subject as applied in the case of *Hill* v. *Wentworth*, 28 Vt. 428, and *Fullam et al.* v. *Stearns et al.*, 30 Vt. 443, and *Bartlett* v. *Wood et al.*, 32 Vt. 372.

In accordance with these views, the decree of the chancellor is reversed, and the case is to be remitted to the court of chancery, with a mandate directing a decree to be made in favor of the orator, according to the terms of the former decree, with this exception or modification, that the engine and boilers are to be declared fixtures passing with the real estate, and, as such, are to be held by the orator under his mortgage ; and the orator is to be allowed his costs in this court.