# WILLIAM H. HART, RESPONDENT, *v.* GEORGE SHELDON, APPELLANT.

*Fixtures — when a movable engine and boiler become a fixture so as to be covered by a mortgage on the real estate.*

In 1872 one Wesley having purchased a lot of ground, upon which stood a frame building then used as a tannery, converted it into a tub manufactory, and placed therein suitable machinery which was run by a stationery steam-engine. In 1875 Wesley sold the premises and all the machinery to Parsons, who as a part of the purchase-money assumed the payment of a bond and mortgage given by Wesley at the time of his purchase. Parsons purchased, with a view of continuing the business established by Wesley. In 1876, the old engine being worn out, Parsons bought a new combined boiler and engine of six-horse power which stood on wheels six inches in diameter. The wheels rested upon the ground and were not in any way annexed or fastened to it or to the building, and the engine could be removed from the building at any time without injury to it. The smoke-stack passed through the roof of the building.

At the time of purchasing the engine Parsons gave a chattel mortgage thereon, which he subsequently paid. Thereafter he gave other chattel mortgages on the engine and boiler, and some of the machinery in the building, under which the plaintiff claims title to them. The defendant claims title to them as fixtures which were covered by the real estate mortgage given by Wesley.

*Held,* that the court erred in ruling, as a matter of law, that the engine and boiler were not fixtures, and that they were not covered by the real estate mortgage; that whether or not they were fixtures depended upon the intention with which Parsons removed them to and placed them in the building; that this question should have been submitted to the jury with instructions to find that they became fixtures if they should find that Parsons intended when he placed them in the building to make a permanent improvement to the property and furnish the power to run the machinery contained therein.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial.

This is an action on the case in the nature of a suit in trover, for the conversion of one portable steam boiler and engine, one planer, one header, a quantity of shafting and pulleys and other machinery used in a firkin and tub factory.

John Parsons was the proprietor of the property. The plaintiffs claim title under certain chattel mortgages executed by Parsons; and the defendant, under a real estate mortgage executed by Parsons' grantor, Wesley, of premises upon which the factory

building stands, the property in dispute being claimed by the defendant as fixtures. In 1872 one Wesley purchased the premises, consisting of one-half acre, upon which there was standing frame buildings, then used as a tannery, the machinery being driven by a stationary steam-engine. The lands and buildings were of small value, not exceeding $600. Wesley converted the buildings into a factory for the manufacture of firkins and tubs, and placed therein machinery adapted to that purpose, consisting of a planer, lathes, headers and circular saws, all run by steam power. In 1875 Wesley sold the premises and all the machinery to Parsons. At this time the real estate mortgage on the premises was owned by Henry Sheldon. As a part of the purchase-money Parsons assumed the payment of this lien and Wesley was discharged from' personal liability, Parsons giving his own in lieu thereof. Parsons was a cooper by trade and purchased the factory with a view of continuing the business established by Wesley. In 1876, the engine then in use being worn out and useless, the same was removed, and Parsons purchased the engine mentioned, in suit, and removed it to the factory, and it was there used as the motive power until the real estate mortgage was foreclosed in 1881, and the defendant became a purchaser of the premises. The boiler and engine was of six-horse power, and was combined and resting in its own frame, standing on wheels or trucks six inches in diameter. When received on the premises it was drawn from the depot by one pair of horses. When placed in position for use it was within the buildings and left standing on the wheels, which rested directly upon the ground, without any other mode of annexing or fastening the same to the soil than by its own weight. It could be removed from the building on the trucks without injuring the same. The shafting in use was fastened to the frame of the building by bolts, bands and screws, in a permanent manner; but the manner in which the engine was connected with the shafting is not stated in the evidence. The smoke-stack passed up through the roof of the building.

At the time of the purchase of this engine Parsons gave a chattel mortgage thereon to secure the purchase-money, which he afterwards paid up in full. In 1878 and 1881 he placed the chattel mortgages on the engine and boiler and some of the machinery in the building. Under these the plaintiff bases his claim of title.

On the trial it was ruled, as a matter of law, that the engine and boiler were not fixtures, and that the plaintiff was entitled to recover their value, and as to the other articles questions of fact were submitted to the jury and the plaintiff recovered a verdict for the sum. of $597.38, and judgment was entered thereon.

The defendant moved, at Special Term, for a new trial, which was denied.

From the judgment and the order the defendant appeals.

*W. L. Sessions,* for the appellant.

*P. D. Murray,* for the respondent.

BARKER, J.:

As the chattel mortgages on the engine and boiler, under which the plaintiff claims title, were executed after these articles were removed to the premises and put in use, the mortgages never attached as liens on the property as against the defendant and those under whom he claims, if they were fixed to the real estate and became part of the freehold. Parsons having acquired his title subject to the real estate mortgage and assumed the payment of the debt secured thereby, by a personal covenant, the question presented is to be considered as one arising between mortgagor and mortgagee. The rule in such cases is the same as the one applied to grantor and grantee, and between these parties everything that forms a part of the freehold passes by a sale and conveyance of the freehold itself, if there be nothing to indicate a contrary intention. Fixtures, and additions in the nature of fixtures, which are placed in a building by a mortgagor after he has mortgaged the same, become part of the realty, as between him and the mortgagee, and cannot be removed or otherwise disposed of by him while the mortgage is in force. These are admitted propositions.

What shall be considered as fixtures, and as such pass with the real estate, is often a vexed question, and is not always easy of determination. Different rules prevail under different circumstances, depending on the relation of the parties and the nature and use of the property and the intention with which the owner of the property removed the articles upon and affixed the same to the land. The principle of law that movables, when attached to land, become

part of the freehold and pass with it has its origin in the common law. The rule, as anciently established, has been very much relaxed in modern times in favor of some parties having no interest in the fee of the land, particularly between landlord and tenant, and also as between grantor and grantee and mortgagor and mortgagee, concerning a class of machinery used in manufacturing establishments. Hardly any two decisions can be found that are precisely alike, each having some distinctive peculiarity which has been seized upon in determining the result. Many of the rules of interpretation, as stated and laid down in some of the cases and followed in particular instances, are hostile and irreconcilable. All of the elementary writers, as well as most of the cases, however, agree that the article claimed to be part of the freehold must be affixed or annexed in some way to the land or it continues to be personal property. By the old rule, whatever was affixed to the realty by the mere act of annexation immediately became part and parcel of the freehold itself. (Broom's Legal Maxims, m. p. 295; Lee v. Risdon, 7 Taunt., 190.)

Amos and Farrar, in their treatise on the law of fixtures, remark; that in order to constitute a fixture, it is necessary that the article should be laid into the land, or united to it, or to substances previously united therewith. Based upon this rule as to the necessity of annexation in some form, in its application the slightest attachment has been held sufficient in some instances, and constructive annexation has been adopted in others. As to the boiler and engine, I am of the opinion that it was in fact affixed and attached to the soil, so that it became part of the freehold, if it was the intention of the owner of the land, at the time he removed the same on to the premises, to make it a permanent improvement to the freehold with a view of adding to its value and to propel the machinery used therein. If this view is correct it was error to hold as a matter of law, that, the engine and boiler were personal property, as against the claim of the defendant, and it should have been submitted to the jury as a question of fact, with the instruction that if they found that such was the intention and purpose of the owner of the freehold, then the character of the annexation was such as to constitute the boiler and engine a fixture.

The evidence was such as to sustain the conclusion, if such was

the opinion of the jury, that it was the intention of Parsons to affix the engine and make it a part of the realty. It was the motive power used to drive the machinery in the factory, and well adapted for that purpose. It was used in the building in the place of an engine and boiler which had been removed from the factory because they were worn out and useless. Without motive power of some kind the building and machinery would have been of much less value, and the business in which the owner was then engaged could not have been continued. He was personally liable to pay the debt secured by the mortgage, and so far as I can discover, he had no motive or interest in keeping the engine a movable thing and treating it as personal property. When Parsons purchased the property and assumed the payment of the mortgage he assured the holder of that security, that, he intended to continue the business in the factory and run the same to its full capacity, and that the machinery was attached to the freehold and constituted a part of the property mortgaged, and he promised also to insure the property and assign the policy to him as a further security. This may not amount to a valid agreement that the motive power thereafter to be brought upon the premises and placed into use should, as between them, be regarded as a part of the freehold, yet it is strong evidence in the defendant's favor that Parsons intended, when he placed the boiler and engine in position and adopted it as the motive power to be used in the factory, that he intended to annex it to the freehold.

There is evidence that the mortgagor had a contrary intention, which consists mainly in the circumstance that he gave a chattel mortgage to the seller to secure the purchase-money. This is not a controlling circumstance, for the reason that he afterwards paid up and discharged the same, and that being out of the way, the real estate mortgage attached, if they had become fixtures.

A subsequent chattel mortgage, under which the plaintiff claims title, embraced the shafting and other machinery, which, as between grantor and grantee, mortgagor and mortgagee, were fixtures beyond all dispute.

Mere intention to make an article personal a fixture, without annexation to the realty, will not make it one, but when such an intention does exist in the mind of the owner of the land and of

the article, then the slightest affixing will make it a part of the freehold. Such intention often becomes the controlling fact in determining the question whether, in law, the article in dispute is or is not a fixture.

Mr. Washburn says : " Whether a thing which may be a fixture becomes a part of the realty by annexing it, depends, as a general proposition, upon the intention with which it was done." (Vol. 1, page 17.)

In *McCrea* v. *The Central National Bank* (66 N. Y., 495), RAPALLO, who prepared the opinion of the court, remarked, " as between vendor and vendee, the mode of annexation is not the controlling test. The purpose of the annexation, and the intent with which it was made, is in such cases the most important consideration. The permanency of the attachment does not depend so much on the degree of physical force with which the thing is attached, as upon the motive and intention of the party attaching it. If the article is attached for temporary use, with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor. If it is placed there for the permanent improvement of the freehold, he may."

Numerous other cases might be cited where the courts have made the intention with which the act of annexation is done the controlling fact in determining whether the article is a fixture or not. This is a reasonable rule by which to determine the controversy, when one arises, whether the article is a part of the realty or not, for the reason that the person whose intention is made the test was, at the time of the affixing, the owner of both species of property.

As to the annexation to the freehold, and whether there was one in the sense of the law, much consideration should be given, in my opinion, to the localization which was given to the boiler and engine by its long and continued use in the same position. It was placed within the walls of the building and covered by the roof, and rested directly upon the earth, and was held in position, so that it could be safely and properly used, by its own weight. This may be considered within the meaning of the ancient rule, a letting of the boiler and engine into the earth and annexing it thereto. This rule has not been relaxed in any case, as between grantor and grantee, mortgagor and mortgagee, when

applied to the motive power used in propelling machinery on the premises in question, whether such power be water or steam. On the contrary, I think that the cases show that the slightest annexation of the motive power has been held sufficient to constitute the same a part of the realty. As we all know, many valuable farm buildings constructed of wood rest on a few disconnected stones as a foundation, which are not imbedded in the earth, and rest wholly on the surface and are kept in position by the power of gravitation; yet, within the rule, such buildings are deemed annexed to the soil or imbedded therein and go as a part of the freehold. Any frame house with the sills laid directly on the earth would be regarded as attached, within the rule, if the owner of the soil intended to make the same a part of the realty when it was erected. Placing a movable on the earth is, in a sense, affixing it to the earth. To complete the annexation it is not necessary to cover any portion of it with the earth or to prepare the surface for it to rest upon. By the law of gravitation it becomes affixed to the spot where it was placed. Whether in any particular instance it is affixed to the land and goes with it as a part of the realty depends upon other considerations.

As to what constitutes an annexation of a movable, so as to make it a part of the realty was fully considered in *Snedeker* v. *Warring* (12 N. Y., 170), and the court there said : " A thing may be as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection, often exercises a controlling influence, and its connection with the land is looked at principally for the purpose of ascertaining whether that intent was that the thing in question should retain its original character or whether it was designed to make it a permanent accession to the lands."

The discussion of the question in the case last mentioned is interesting and instructive. The application of the principle which applies to and governs this class of cases should be applied intelligently to the improvements which are constantly being made in the mechanic arts, and the improved mode of constructing machinery and holding the same in the place intended for use. The mode of combining engines and boilers as one article ready for use on leav-

ing the workshop, like the one in question, is a modern invention. The boiler, flues and fire-box are constructed together, and the engine combined therewith, and form one piece of mechanism or machinery placed in a frame adapted to sustain and support the same when in use, and are ready to be operated on being placed on any smooth, firm surface, such as the floor of a building, a brick foundation, or directly upon the ground. They are often made portable by mounting the same upon trucks which are used as a means of moving them from place to place. Except when so constructed, they are no more portable than any other piece of machinery of like weight. Designating this combination, of engine and boiler, inclosed in a frame suitable to stay and hold it in position while being operated, as being portable, has no significance whatever, for it is but a name given to a thing.

The circumstance that this engine and boiler were left to stand on the low trucks, which were in some manner attached to the frame, as a means of moving the same, should not be regarded as controlling, and as a reason for holding as a matter of law that they were not fixtures. It is evidence on the question whether or not the owner intended to affix them to the land as a permanent improvement. One engine and boiler constructed after a plan like this may be so slight and its motion so violent, that, it must be set or fastened in some way before it can be used, another is heavy enough to be kept in place by its own weight. There is no reason for saying that one is a fixture and the other is not. It is absurd to say that it is necessary to nail the heavy one to the floor to make it a part of the freehold, when twenty men could not move it a half-inch. In ascertaining when movables have become part of the realty, regard should be had to the manner in which they are annexed. In this case the engine and boiler were put in to supply the premises with power, to propel machinery which had become part of the fixtures. They were well adapted for the purpose intended, and without such power the value of the real estate would have been much less, and, if it was the intention of Mr. Parsons, the owner, to permanently attach and use them with the premises, they became fixtures. (*Tifft v. Horton*, 53 N. Y., 377; *Voorhees* v. *McGinnis*, 48 N. Y., 278; *Potter* v. *Cromwell*, 40 N. Y., 287.)

As to the mode of affixing, whether by actual physical annexa-

tion or by gravitation, when used in propelling machinery in mills and factories by steam or water power, the following cases may be referred to as bearing on the question : *Winslow* v. *Merchants' Insurance Company* (4 Met., 306), *Sands* v. *Pfeiffer* (10 Cal., 258), *Hill* v. *Wentworth* (28 Vt., 428), *Harris* v. *Haynes* (34 id., 220), *Sweetzer* v. *Jones* (35 id., 317), *Fullam* v. *Stearns* (30 id., 443), *Voorhis* v. *Freeman* (2 Watts & Sargt. [Pa.], 116), *Pyle* v. *Pennock* (id., 390).

As to the articles of machinery used in the building for which the plaintiff had a recovery for their value, we do not discover any error in the rulings of the court, as to whether they were or were not fixtures, although they were actually annexed while in use, the same being necessary to keep them steady and in position, they did not become part of the freehold estate unless such was the intention of the owner when he purchased and put them in use.    The question of intention was made controlling, although there was an actual physical annexation, and the cases already cited are authority upon that point.

The defendant did not submit the question to the court and waive the right to go to the jury, as claimed by the learned counsel for the plaintiff.    At the close of the evidence the defendant asked the court to direct a verdict in his favor, on the ground that the machinery was real estate.    The plaintiff at the same time requested the court to direct a verdict in his favor, for the engine and boiler, which the court did, and to which the defendant took an exception.

It is an exception to a ruling made at the request of the plaintiff, and the case does not fall within the rule upheld in the cases referred to.

The judgment should be reversed, new trial granted and the order denying a new trial reversed, with costs to abide the event.

SMITH, P. J., BRADLEY and CORLETT, JJ., concurred.

Judgment reversed and new trial ordered, costs to abide the event.